IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

VENEZUELA US SRL,

*Petitioner-Appellee,*

v.

BOLIVARIAN REPUBLIC OF VENEZUELA,

*Respondent-Appellant,*

On Appeal from the United States District Court for the
District of Columbia, No. 22-cv-3822 (Hon. Jia M. Cobb)

**FINAL BRIEF OF PETITIONER-APPELLEE IN OPPOSITION
TO RESPONDENT-APPELLANT**

John M. Conlon
Kevin B. Weehunt, Jr.
MAYER BROWN LLP
1221 Avenue of the Americas
New York, NY 10020
Tel.: (212) 506-2500
jconlon@mayerbrown.com
kweehunt@mayerbrown.com

Michael P. Lennon, Jr.
MAYER BROWN LLP
700 Louisiana Street, Suite 3400
Houston, TX 77002
Tel.: (713) 238-3000
mlennon@mayerbrown.com

*Counsel for Petitioner-Appellee*

December 24, 2025

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

## A. Parties And *Amici*

The parties in the District Court were Petitioner Venezuela US SRL and Respondent Bolivarian Republic of Venezuela. No *amici* appeared in the District Court.

The parties in this Court are Petitioner-Appellee Venezuela US SRL and Respondent-Appellant Bolivarian Republic of Venezuela. No *amici* have yet appeared in this Court.

Pursuant to Circuit Rule 26.1, Venezuela US SRL certifies that Venezuela US SRL is a wholly owned subsidiary of Occidental Petroleum Corporation, which is a publicly traded company on the New York Stock Exchange under the ticker symbol "OXY."

## B. Rulings Under Review

This appeal arises from the District Court's June 9, 2025 Order and Memorandum Opinion in *Venezuela US SRL v. Bolivarian Republic of Venezuela,* No. 22-cv-3822-JMC (District Court Docket Nos. 38 and 39), granting the petition of Petitioner-Appellee Venezuela US SRL to recognize and enforce a foreign arbitral award under the Convention on the Recognition and enforcement of Foreign Arbitral Awards, also known

as the New York Convention. The official citation for this Order and Memorandum Opinion is 789 F. Supp. 3d. 1 (D.D.C. 2025).

**C.    Related Cases**

The case under review has not been before this Court previously.

# TABLE OF CONTENTS

**Page**

GLOSSARY ..................................................................................ix

INTRODUCTION ........................................................................ 1

COUNTERSTATEMENT OF ISSUES ..................................... 6

STATUTES AND REGULATIONS ........................................... 7

STATEMENT OF THE CASE ................................................... 7

    A.    Factual Background ............................................... 7

        1.    The Underlying Dispute ............................... 7

        2.    The Venezuelan Government ...................... 10

    B.    Procedural History ............................................. 11

SUMMARY OF ARGUMENT ................................................. 14

STANDARD OF REVIEW ....................................................... 17

ARGUMENT ............................................................................ 18

I.     THE DISTRICT COURT'S ORDER CONFIRMING THE
      FINAL AWARD SHOULD BE AFFIRMED. ............................... 18

    A.    Confirmation Of An Arbitration Award Against
        Venezuela Does Not Constitute Or Imply A Denial Of
        The President's Recognition Of The Interim
        Government ............................................................. 20

        1.    Pemex Does Not Support Venezuela's Argument ...... 23

    B.    Venezuela Fails To Identify A Well-Defined Public
        Policy Sufficient To Invoke The New York Convention's
        Public Policy Exception To Arbitral Award
        Confirmation. ........................................................ 26

        1.    Separation Of Powers Is Not A Relevant Public
             Policy. .......................................................... 31

        2.    The Fact That Recognition Of The Final Award
             May Lead To Judgment Enforcement In The U.S.
             Does Not Support Venezuela's Public Policy
             Argument. .................................................... 33

# TABLE OF CONTENTS
(continued)

**Page**

II.    THE FEDERAL ARBITRATION ACT PROVIDES NO
       OTHER GROUNDS TO REFUSE CONFIRMATION OF
       THE AWARD ....................................................................... 36

CONCLUSION ................................................................................ 37

CERTIFICATE OF COMPLIANCE ................................................. 38

CERTIFICATE OF SERVICE ......................................................... 39


ADDENDUM ................................................................................ 1(A)

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

\* *BCB Holdings Ltd. v. Gov't of Belize,*
  650 F. App'x 17 (D.C. Cir. 2016)......................28, 32

*Belize Soc. Dev. Ltd. v. Gov't of Belize,*
  668 F.3d 724 (D.C. Cir. 2012) ...........................18

*CITGO Petroleum Corp. v. Ascot Underwriting Ltd.,*
  158 F.4th 368 (2d Cir. 2025)..............................30

*Compañía De Inversiones Mercantiles S.A. v. Grupo Cementos De Chihuahua S.A.B. De C.V.,*
  58 F.4th 429 (10th Cir. 2023) ...........................32

\* *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción,*
  832 F.3d 92 (2d Cir. 2016) ....................... 23, 24, 25, 26, 32

*de Csepel v. Republic of Hungary,*
  714 F.3d 591 (D.C. Cir. 2013) ...........................19

\* *Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria,*
  844 F.3d 281 (D.C. Cir. 2016)................... 26, 27, 28

*Guar. Tr. Co. of N. Y. v. United States,*
  304 U.S. 126 (1938).......................................31

*Jiménez v. Palacios,*
  250 A.3d 814 (Del. Ch. 2019) (Delaware Court of Chancery action addressing the Interim Government's authority to appoint directors of Petróleos de Venezuela, S.A.)......................................35

*Kurke v. Oscar Gruss & Son, Inc.,*
  454 F.3d 350 (D.C. Cir. 2006) ...........................17

\* Authorities upon which we chiefly rely are marked with asterisks.

*Metro. Mun. of Lima v. Rutas De Lima S.A.C.*,
   141 F.4th 209 (D.C. Cir. 2025) ............................................. 27

\* *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ................................................ 17, 19, 25

*Republic of Panama v. Republic Nat. Bank of N. Y.*,
   681 F. Supp. 1066 (S.D.N.Y. 1988) ..................................... 35

*The Sapphire*, 78 U.S. 164 (1870) ...................................... 29, 31

\* *Tatneft v. Ukraine*,
   21 F.4th 829 (D.C. Cir. 2021) ......................................... 5, 17

*TermoRio S.A. v. Electranta S.P.*,
   487 F.3d 928 (D.C. Cir. 2007) ........................................ 32, 33

*In re Terrorist Attacks on Sept. 11, 2001*,
   657 F. Supp. 3d 311 (S.D.N.Y. 2023) ................................. 34, 35

*United Paperworkers Int'l v. Misco, Inc.*,
   484 U.S. 29 (1987) ............................................ 5, 7, 8, 27

*Valores Mundiales S.L. et al. v. Bolivarian Republic of
   Venezuela*,
   No. 1:23-mc-298 (D. Del. June 7, 2023) ............................... 34

\* *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela,
   Ministerio del Poder Popular
   para Relaciones Exteriores*, 87 F.4th 510, 522 (D.C. Cir.
   2023) ...................... 1, 2, 4, 14, 15, 16, 20, 21, 22, 23, 29, 30

*Venezuela US, S.R.L. v. Bolivarian Republic of Venezuela*,
   789 F. Supp. 3d. (D.D.C. 2020) ..................................... 13, 30

*Venezuela US, S.R.L. v. Bolivarian Republic of Venezuela*,
   PCA Case No. 2013-34, Decision on Jurisdiction (Oct. 28,
   2025) ..................................................................... 9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.,*
461 U.S. 757 (1983)............................................................26

*Zivotofsky ex rel. Zivotofsky v. Kerry,*
576 U.S. 1 (2015).........................................................29, 30

**Statutes**

9 U.S.C. § 207 ............................................................15, 36

28 U.S.C. § 1608 ..............................................................12

Arbitration Rules of the United Nations Commission on International Trade Law, U.N. Doc. A/31/17, chap. I, § 1 (1976)............................................................................8, 10

Federal Arbitration Act,
9 U.S.C. § 201 *et seq*...................................................11, 36

# GLOSSARY

| | |
|---|---|
| **Dkt. No.__** | Docket Number in *Venezuela US SRL v. Bolivarian Republic of Venezuela,* No. 22-cv-3822-JMC, U.S. District Court for the District of Columbia. |
| **FAA** | Federal Arbitration Act, 9 U.S.C. § 1 et seq. |
| **Final Award** | Final Award issued on 4 November 2022 in PCA Case No. 2013-34, Venezuela US, S.R.L. v. The Bolivarian Republic of Venezuela. |
| **Interim Award** | Interim Award on Jurisdiction on the Respondent Objection to Jurisdiction Ratione Voluntatis issued on 26 July 2016 in PCA Case No. 2013-34, *Venezuela US, S.R.L. v. The Bolivarian Republic of Venezuela.* |
| **Interim Government** | The Venezuelan Government that resulted from the Venezuelan National Assembly's January 23, 2019 order vacating the results of the 2018 presidential election and naming its own president, Juan Guaidó, as the Interim President of Venezuela. |
| **JA** | Joint Appendix. |
| **Maduro Regime** | The Presidency of Nicolás Maduro, who began serving as the President of Venezuela in 2013. |
| **New York Convention** | United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38. |
| **Partial Award** | Partial Award on Jurisdiction and Liability issued on 5 February 2021 in PCA Case No. 2013-34, *Venezuela US, S.R.L. v. The Bolivarian Republic of Venezuela.* |

| | |
|---|---|
| **Treaty** | Agreement Between the Government of Barbados and the Government of the Republic of Venezuela for the Promotion and Protection of Investments, July 15, 1994, 1994 U.N.T.S. 181. |
| **UNCITRAL Rules** | The 1976 Arbitration Rules of the United Nations Commission on International Trade Law. |
| **Venezuela** | The Bolivarian Republic of Venezuela, Respondent-Appellant. |
| **Ven. Br.** | Appellant Brief Filed by the Bolivarian Republic of Venezuela. |
| **VUS** | Venezuela US SRL, Petitioner-Appellee. |

## INTRODUCTION

This appeal arises from the District Court's confirmation of the Final Award entered in favor of Petitioner Venezuela US SRL ("VUS") and against Respondent Bolivarian Republic of Venezuela ("Venezuela"). Venezuela challenges the Order of the U.S. District Court for the District of Columbia ("District Court") confirming the Final Award based on a single argument, which this Court has recently and decidedly resolved against Venezuela.

Venezuela's lone argument on appeal is that the judiciary cannot confirm the Final Award due to the public policy exception under the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention"). More specifically, Venezuela contends that judicial confirmation of the Final Award would usurp the Executive Branch's exclusive authority to recognize the governments of foreign nations. This Court, however, already has held that judicial confirmation of an arbitral award against a foreign state does not undermine or usurp the Executive's recognition power. *See Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para*

*Relaciones Exteriores*, 87 F.4th 510, 522 (D.C. Cir. 2023) ("*Valores Mundiales*"). Venezuela's attempt to distinguish *Valores Mundiales* fails as the reasoning of that decision is dispositive of the sole issue on appeal here.

This action arises out of the refusal of Petroritupano S.A. ("Petroritupano"), an oil production company partially owned by the Venezuelan state, to pay dividends owed to VUS. In March 2013, VUS commenced arbitration against Venezuela for the failure to pay those dividends. The arbitration was divided into three phrases: jurisdiction, merits, and damages. VUS prevailed at the jurisdiction phase after extensive briefing and oral argument. Shortly thereafter, the parties submitted further briefing on the merits and participated in an additional hearing.

Venezuela was represented in the first two phases of the arbitration by Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), which was retained by the regime of the then-recognized President Nicolás Maduro ("Maduro Regime"). In 2018, while the decision on the merits phase was pending, but after both the briefing had been submitted and the hearing completed, Venezuela held a presidential election in which Maduro

claimed victory. The results of this election were challenged by the Venezuelan National Assembly, which vacated the election results, and named its own president, Juan Guaidó, as the Interim President (the "Interim Government"). President Donald J. Trump then recognized the Interim Government as the legitimate Venezuelan government.

In 2021, the Tribunal issued its merits ruling in VUS's favor. The arbitration continued to the damages phase, and the Maduro Regime, now represented by different counsel, continued to act on behalf of Venezuela in the proceedings. The Tribunal then issued the Final Award, in which it awarded as damages to VUS its share of the unpaid Petroritupano dividend distributions, plus interest and costs. VUS then petitioned the District Court for Confirmation and Enforcement. The District Court granted the Petition and this appeal followed.

Venezuela's appeal fails for two principal reasons.

*First*, Venezuela has failed to establish that the Final Award's confirmation implicates the Executive Branch's authority to recognize foreign governments. Venezuela's argument is based on a fundamentally flawed premise: that confirming the Final Award is tantamount to recognizing the Maduro Regime. In confirming the Final Award,

however, the District Court did not recognize the legitimacy of the Maduro Regime, nor did the District Court reject the President's recognition of the Interim Government. Indeed, *nothing* in the District Court's Order contradicts or is in any way at odds with the President's recognition of the Interim Government. The District Court enforced an arbitration award against the Venezuelan state, not a particular government of that state.

Moreover, in *Valores Mundiales*, this Court specifically held that confirming an arbitration award against Venezuela—even when the Maduro Regime participated in arbitration proceedings after President Trump's recognition of the Interim Government—does not implicate the President's recognition power. 87 F.4th at 521-22. Venezuela attempts to distinguish this decision, asserting that *Valores Mundiales* is limited to arbitration awards issued pursuant to the ICSID convention, and not awards under the New York Convention. This is a distinction without a difference. The Court's analysis of the President's recognition power with respect to the confirmation of arbitration awards is equally applicable to the confirmation of awards pursuant to the New York Convention as it is to ICSID Awards.

*Second*, even if the confirmation of an arbitration award were deemed in some manner to infringe upon the President's authority to recognize foreign governments, any such unquantifiable and imperceptible infringement on the recognition power would not constitute a public policy sufficient to defeat confirmation of the award under the New York Convention. Venezuela carries the exceptionally high burden of establishing that the President's recognition power implicates the United States' "most basic notions of morality and justice," (*Tatneft v. Ukraine*, 21 F.4th 829, 837 (D.C. Cir. 2021)), which it must do by reference to law and precedent. *See, e.g.*, *United Paperworkers Int'l v. Misco, Inc.*, 484 U.S. 29, 43 (1987). Yet Venezuela has not carried this burden, nor has it cited any cases to support its position. Rather, Venezuela simply claims that the mere existence of the President's recognition power is sufficient to invoke the public policy exception. This argument has been rejected consistently.

Venezuela has not met its burden under the New York Convention's public policy exception to oppose confirmation of the Final Award, and accordingly, this Court should affirm the judgment of the District Court.

## COUNTERSTATEMENT OF ISSUES

1.    Whether the District Court correctly held that confirmation and recognition of the Final Award against Venezuela is not barred by the New York Convention's public policy exception?

## STATUTES AND REGULATIONS

All applicable statutes and regulations are reproduced in the addendum.

## STATEMENT OF THE CASE

### A.     Factual Background

#### 1.     *The Underlying Dispute*

This dispute arises from VUS's investment in Petroritupano, a Venezuelan "*empresa mixta,*" or "mixed company," which holds the rights to the oil production in a specified region in Venezuela. Final Award ¶ 3, JA34. Beginning in 2006, VUS acquired an 18% share of Petroritupano; Corporación Venezolana del Petróleo, S.A., which was owned by the Venezuelan state, owned 60%, and Petrobras Energía S.A., the subsidiary of a Brazilian state owned company, owned 22%. JA23. From 2006 through 2009, Petroritupano posted a net profit every year: $146 million in 2006, $260 million in 2007, $341 million in 2008, and $177 million in 2009. JA11. As a result, in 2008 and 2009, the three shareholders approved dividend payments. JA12. Based on its 18% ownership share, VUS was entitled to receive $58,870,898 for the years 2008 and 2009. *Id.* Instead, VUS received no dividends, while

Petroritupano's other two owners both received their dividend payments in full. *Id*.[1]

Having been denied its dividend payments, on March 22, 2013, VUS filed a request for arbitration pursuant to the Agreement Between the Government of Barbados and the Government of the Republic of Venezuela for the Promotion and Protection of Investments, July 15, 1994, 1994 U.N.T.S. 181 (the "Treaty"). Partial Award ¶ 3, JA48. The dispute was heard by a three-arbitrator tribunal (the "Tribunal") and was conducted under the 1976 Arbitration Rules of the United Nations Commission on International Trade Law (the "UNCITRAL Rules") in The Hague, Netherlands. JA59.

The Tribunal trifurcated the arbitration into three phrases. *First*, the Tribunal heard Venezuela's jurisdictional objections. JA12. This first phase included extensive briefing throughout 2013 and 2014, as well as a 2014 hearing, and resulted in the 2016 Interim Award. *Id*. In the

---

[1] Petrobras Energía S.A. received its share of the dividend profits in 2011, on the eve of a diplomatic trip to Brazil by Venezuela's then-President, Hugo Chávez. JA12.

Interim Award, the majority of the Tribunal rejected Venezuela's threshold jurisdictional objections. JA12-JA13.[2]

*Second*, the Tribunal heard Venezuela's additional jurisdictional arguments as well as the merits of the arbitration. This phase also involved extensive briefing and a merits hearing in 2017. JA13. Nearly four years after that hearing, the Tribunal issued the 2021 Partial Award, in which the Tribunal confirmed that it had jurisdiction over VUS's claims and held that Venezuela had breached the Treaty by discriminating against VUS with respect to the 2008 and 2009 dividends. Partial Award ¶ 258, JA59.

*Third*, the Tribunal heard evidence and arguments concerning the appropriate amount of damages that Venezuela was required to pay VUS arising from its breach. Final Award ¶¶ 11, 13-14, 19, 31, JA35-JA37. In February 2022, the Tribunal issued the unanimous Final Award, in which the Tribunal awarded VUS (1) $58,870,898 in damages as the nominal value of VUS's unpaid dividends, (2) pre-award interest of

---

[2] Venezuela's jurisdictional arguments were also rejected by the Hague Court of Appeal (Gerechtshof Den Haag) in an action by Venezuela seeking, unsuccessfully, to set aside the Final Award. *See Venezuela US, S.R.L. v. Bolivarian Republic of Venezuela*, 200.334.287/01, Judgment of October 28, 2025 (Arrest van 28 oktober 2025).

$46,624,436, and (3) post-award interest at the rate of twelve-month USD LIBOR plus 4%, with annual compounding of the accrued interest. Final Award ¶ 107, JA40. Further, the Tribunal also ordered that Venezuela pay 70% of VUS's arbitration costs and legal fees, amounting to $3,215,534.99, plus simple interest at a rate of 6% from one month following the date of the Final Award and until the time of full payment. Final Award ¶¶ 106, 107(7), JA40.

## 2. *The Venezuelan Government*

From the outset of the arbitration, Venezuela's government was led by President Maduro, and the Maduro Regime, at the time the recognized government, participated in the arbitration on behalf of Venezuela. Final Award ¶ 2, JA34. The Maduro Regime continued to represent Venezuela as the recognized government throughout the first and second phases of the arbitration, with Appellant's counsel, Curtis, serving as Venezuela's legal counsel in the arbitral proceedings. Final Award ¶ 2, JA34.

On May 20, 2018, Venezuela held a presidential election in which incumbent President Maduro claimed victory. JA63. This claim was immediately challenged, which led to requests that the results be overturned. *Id.* As a consequence, on January 23, 2019, the National

Assembly of Venezuela invoked Article 233 of the Venezuelan Constitution to invalidate the election results and declare its president, Juan Guaidó, the Interim President of Venezuela. That same day, President Donald J. Trump officially recognized the Interim Government as Venezuela's legitimate government and de-recognized the Maduro Regime. JA63. Curtis continued to represent Venezuela in the arbitration until June 30, 2020, at which point new counsel, Guglielmino & Associados S.S. ("Guglielmino"), was appointed by the Maduro Regime. Final Award ¶ 2, JA34. Curtis learned of the appointment in February 2021, when the 2021 Partial Award was issued, and neither Curtis, on behalf of the Interim Government or otherwise, nor the Interim Government made any further attempts to participate in the arbitration. JA65. Guglielmino represented Venezuela in the third phase of the arbitration.

## B.    Procedural History

On December 27, 2022, VUS filed its Petition to Recognize and Enforce the Final Award pursuant to the FAA, 9 U.S.C. § 201 *et seq.* ("Petition") in the District Court. In the Petition, VUS argued that the District Court should confirm the Final Award because the Final Award

was validly issued by the Tribunal pursuant to the New York Convention and the FAA offered no basis to deny recognition and enforcement. JA8-JA21.

VUS served Venezuela pursuant to 28 U.S.C. § 1608(a)(4) through diplomatic channels with the U.S. Department of State on October 11, 2023, and Venezuela filed its opposition to the Petition on December 11, 2023. JA4.

Venezuela opposed confirmation on one ground only: asserting that the Final Award was unenforceable under the New York Convention's public policy exception. JA96-JA113. More specifically, Venezuela argued that U.S. public policy did not allow the judiciary to enforce the Final Award against Venezuela because the Venezuelan government was represented by the Maduro Regime during the Arbitration's damages phase, and not by representatives of the Interim Government. *Id*. Thus, according to Venezuela, recognizing the Final Award usurps the Executive Branch's exclusive authority to recognize foreign governments. JA99-JA100.

On June 9, 2025, the District Court granted VUS's Petition over Venezuela's objections. *Venezuela US SRL*, 789 F. Supp. 3d. at 1. The District Court rejected Venezuela's arguments on multiple grounds.

*First*, the District Court noted that Venezuela had failed to cite a case establishing that the power of the executive to recognize foreign governments is a relevant public policy, the violation of which offends basic notions of morality and justice under the New York Convention.

*Second*, the District Court observed that Venezuela "does not even attempt to justify its position" that enforcement of the Final Award "would violate the forum state's most basic notions of morality and justice." JA106 (quoting *Tatneft v. Ukraine*, 21 F.4th 829, 837 (D.C. Cir. 2021)). The District Court also commented that "Venezuela cites no case finding a public policy issue on facts similar to this case—or anything close." JA107.

*Third,* the District Court held that, "[e]ven if the recognition power qualified as a relevant public policy" under the New York Convention, Venezuela could not establish that "confirmation of the Final Award would violate that policy." JA108. Indeed, the District Court explained that the Final Award "runs against the foreign state, not any particular

government thereof." JA111. The District Court continued: "because the Interim Government is the sole recognized government of Venezuela, according to the Executive, it must answer for the obligations of the Republic of Venezuela even though the Maduro regime incurred the original debt and represented the Republic in part of the arbitration." *Id.*

*Finally*, the District Court found that Venezuela's arguments failed based on this Court's decision in *Valores Mundiales,* 87 F.4th 510. Although the District Court recognized that "enforcement under the New York Convention presents a slightly more complicated question than the D.C. Circuit faced under the ICSID Convention in *Valores Mundiales,*" the District Court concluded that, as in *Valores Mundiales*, the enforcement of an arbitration award is not a "recognition" of the government of a foreign state. JA110.

Thus, having found no other grounds to decline confirmation, the District Court granted VUS's Petition. JA113. This appeal followed.

## SUMMARY OF ARGUMENT

The District Court properly granted VUS's Petition and rejected Venezuela's objection to confirmation.

The FAA states that courts "shall confirm [arbitration] award[s] unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York Convention]." 9 U.S.C. § 207. No such grounds for refusal are present here.

Venezuela's sole basis to oppose confirmation is the claim that the District Court erred in granting VUS's Petition because the Final Award violates the Executive Branch's exclusive prerogative to recognize the effective government of foreign states, and thus violates U.S. public policy.

Venezuela has not shown how the Final Award's confirmation would violate any public policy that it purports to have identified. The District Court's order confirming and enforcing the Final Award is not, and does not claim to be, the recognition of a particular regime in Venezuela. As the District Court made clear, the Final Award was entered against Venezuela, and not against a particular governmental administration of Venezuela. JA110.

Indeed, this Court has already rejected this very argument in a prior appeal by Venezuela—represented by Curtis—when opposing confirmation of an ICSID arbitration award in *Valores Mundiales*, 87

F.4th 510. Although confirmation of ICSID Awards differs in a number of respects from confirmation of Awards pursuant to the New York Convention, this Court specifically rejected Venezuela's argument here, holding that the confirmation of arbitral awards against Venezuela, notwithstanding the Maduro Regime's participation in the arbitral proceedings, *is not* "equivalent to recognition of the Maduro regime," and *does not* "imply a denial of the President's recognition of the [Interim] [G]overnment." *Valores Mundiales,* 87 F.4th at 521-22. Venezuela's attempts to distinguish this analysis as being applicable only to ICSID awards fails.

Moreover, even if a U.S. public policy were in some way implicated, Venezuela has failed to meet its burden of establishing that the Award implicates any "well-defined" U.S. public policy, much less how the Final Award's confirmation purportedly violates that policy. Venezuela's failure to do so is fatal to its appeal.

Venezuela cannot identify any case in which the President's recognition power is considered a relevant public policy under the New York Convention. Instead, Venezuela simply asserts that the mere existence of the President's authority to recognize foreign governments

constitutes a well-established public policy for purposes of the New York Convention. Not so. This Court has held repeatedly that the public policy defense must be construed narrowly and will apply only where the "forum state's most basic notions of morality and justice" are threatened. *Tatneft*, 21 F.4th at 837. The recognition power does not meet this exceptionally high standard. As such, the only U.S. public policy at issue here is one that demands confirmation: the "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

Accordingly, and for the reasons discussed in more detail below, VUS respectfully requests that the Court affirm the decision of the District Court.

## STANDARD OF REVIEW

"Judicial review of arbitral awards is extremely limited." *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006) (cleaned up). This Court reviews a district court's confirmation of an arbitration award *de novo* with respect to questions of law and for clear error with respect to questions of fact. *Id.* (citing *LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702, 706 (D.C. Cir. 2001)). Further, "the FAA affords the district

court little discretion in refusing or deferring enforcement of foreign arbitral awards," and this emphatic federal policy of arbitral dispute resolution "appl[ies] with special force in the field of international commerce." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012).

## ARGUMENT

## I. THE DISTRICT COURT'S ORDER CONFIRMING THE FINAL AWARD SHOULD BE AFFIRMED.

Venezuela does not challenge the Tribunal's factual findings or its legal conclusions. It does not assert that Venezuela lacked adequate representation at the arbitration or was denied an opportunity to present its case. Venezuela's sole argument in opposing confirmation of the Final Award is based upon the New York Convention's public policy exception. Specifically, Venezuela contends that because President Trump recognized the Interim Government as Venezuela's legitimate regime prior to the Maduro Regime's participation in the final phase of the trifurcated arbitration (*i.e.,* the damages phase), judicial confirmation of the Final Award would act as a recognition of the legitimacy of the Maduro Regime and thereby violate the U.S. Executive Branch's

Constitutional power to recognize foreign governments. This argument fails.

New York Convention Article V(2)(b) provides that "[r]ecognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that: . . . The recognition or enforcement of the award would be contrary to the public policy of that country." New York Convention Art. V(2)(b). To satisfy this standard, Venezuela must establish both that the President's power to recognize foreign governments is a relevant public policy under the New York Convention, and that the confirmation of the Final Award violates that policy.

An arbitration award is unenforceable as against public policy if the award is "repugnant to fundamental notions of what is decent and just." *de Csepel v. Republic of Hungary*, 714 F.3d 591, 606 (D.C. Cir. 2013) (quoting *Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C. Cir. 1981)). Moreover, the Court must also balance these specific policy considerations against the "emphatic federal policy in favor of arbitral dispute resolution." *Mitsubishi Motors Corp.*, 473 U.S. at 631.

Venezuela has failed to (i) distinguish this case from *Valores Mundiales,* (ii) establish the existence of a relevant public policy, or (iii) demonstrate that such a policy is violated by confirmation of the Final Award. The judgment of the District Court confirming the Final Award should therefore be affirmed.

### A. Confirmation Of An Arbitration Award Against Venezuela Does Not Constitute Or Imply A Denial Of The President's Recognition Of The Interim Government

This Court has held that by confirming an arbitration award against Venezuela in proceedings in which Venezuela was represented by the Maduro Regime, and not the Interim Government, "[n]either the District Court nor this court has 'recognized' any government regime in Venezuela." *Valores Mundiales,* 87 F.4th at 522. This Court explained that confirming such an arbitral award is not "equivalent to recognition of the Maduro [R]egime," and does not "imply a denial of the President's recognition of the [Interim] [G]overnment." *Id.* at 521-22. The same analysis applies here.

*Valores Mundiales* was an enforcement action brought against Venezuela to recognize an ICSID arbitration award. *Id.* at 513. In 2013, two Spanish companies commenced an arbitration against Venezuela

after the Venezuelan government issued an expropriation decree against the companies' assets, resulting in $430 million in damages. *Id.* The Spanish companies prevailed in the arbitration, and Venezuela then moved to annul the arbitration award pursuant to ICSID procedures. *Id.* While these annulment proceedings were in process, the National Assembly of Venezuela vacated the results of the 2018 election and the United States officially recognized the Interim Government as Venezuela's legitimate government. *Id.* The Maduro Regime continued to participate in the annulment proceedings, and the ICSID tribunal ultimately rejected Venezuela's annulment arguments. *Id.* at 517.[3] When the Spanish companies then sought to enforce the ICSID award in the United States, Venezuela, by the Interim Government, opposed confirmation by arguing that enforcing the award "amounted to an impermissible recognition of the Maduro regime as Venezuela's

---

[3] In *Valores Mundiales*, but not here, the Interim Government attempted, unsuccessfully, to replace the Maduro Regime as the government's representative during the annulment proceedings. *See* 87 F.4th at 517 ("On March 27, 2019, during the ICSID annulment proceedings, the Special Attorney General for the [Interim Government] sought to intervene and replace the Maduro government's representative as Venezuela's counsel in the proceeding.").

legitimate representative." *Id.* For the reasons discussed above, however, this Court rejected that argument. *See id.* at 521-22.

In a futile attempt to distinguish *Valores Mundiales*, Venezuela argues that the ICSID award at issue in that case is entitled to "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States," unlike a New York Convention Award, which is subject to broader challenges. Brief for Respondent-Appellant ("Ven. Br.") at 33 (quoting *Valores Mundiales,* 87 F.4th at 513). Although it is true that *Valores Mundiales* involved the confirmation of an ICSID award, this Court's analysis of the recognition doctrine vis-à-vis confirmation of an arbitration award was in no way limited on account of the fact that the award at issue was issued pursuant to ICSID rather than the New York Convention. The Court cited the ICSID enforcement structure as an additional and independent basis to reject Venezuela's arguments—as reflected by the Court addressing Venezuela's "Full Faith and Credit Review" and "Recognition" arguments under separate headings and rejecting both for separate reasons. *Compare* 87 F.4th at 518 ("We first consider whether the ICSID award is owed full faith and credit") *with* 87 F.4th at 521 ("Venezuela next

attempts to skirt the well-established limits of full faith and credit review by suggesting that enforcement of the ICSID awards against Venezuela would contravene the President's recognition authority under Article II of the Constitution.").

### 1. *Pemex Does Not Support Venezuela's Argument*

Venezuela asks this Court to ignore the *Valores Mundiales* precedent, and instead prefer the Second Circuit's opinion in *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción*, 832 F.3d 92 (2d Cir. 2016) ("*Pemex*"). But *Pemex* does not compel a different outcome here. In *Pemex*, the Second Circuit held that the district court did not abuse its discretion in confirming an arbitration award and refusing to recognize decisions of the Mexican courts vacating the award.

The parties in *Pemex* entered into a contract in 1997 in which they agreed to arbitrate any dispute between them. *Id.* at 97. Pemex itself was owned by the Mexican state. *Id.* When a dispute arose, the Petitioner, COMMISA, proceeded to arbitration and ultimately received an award of approximately $300 million. *Id.* While the arbitration was pending, however, the Mexican Congress enacted a law that prohibited arbitration

agreements relating to certain claims, such as those brought by COMMISA, and purported to give this law retroactive effect—likely in direct response to COMMISA's arbitration. *Id.* at 99.

Notwithstanding that decision, the arbitral panel issued its final award in COMMISA's favor. *Id.* Pemex then appealed to the Mexican courts, which vacated the final award, while COMMISA sought confirmation in the United States. *Id.* The district court confirmed the award and refused to defer to the judgment of the Mexican courts based on the public policy against retroactive application of the law. *Id.*

*Pemex* differs from this dispute in numerous, material ways. *First*, the public policy at issue in *Pemex*—non-retroactivity of laws—was well-defined, clearly violated, and the violation of which offended basic notions of morality and justice. The Second Circuit identified numerous cases in which U.S. courts—including the Supreme Court—specifically held that the retroactive application of laws is against U.S. public policy. *See* 832 F.3d at 108 ("Retroactive legislation that cancels existing contract rights is repugnant to United States law.") (collecting cases). *Second*, the Second Circuit concluded that refusing confirmation of the arbitration award would directly implicate this public policy because it would give effect to

the retroactive prohibition on arbitration, (*Id.* at 108-09), in detriment to the emphatic federal policy in favor of arbitration. *Mitsubishi Motors Corp.*, 473 U.S. at 631.

Indeed, *Pemex* evidences the respect that U.S. courts afford to arbitral awards. Despite its vacatur in Mexico, the district court and Second Circuit confirmed the arbitral award. For these reasons, *Pemex* supports VUS's position, not Venezuela's. Here, the result should be no different; U.S. public policy supports confirmation of the Final Award over Venezuela's objections.

Moreover, in *Pemex,* the clarity of the U.S. public policy against retroactive applications of law and the impact of non-recognition of the arbitral award on that policy was well-documented and unassailable. The Second Circuit observed that the precise dispute concerning retroactivity was both specifically addressed in four separate Constitutional provisions and discussed in numerous Supreme Court cases.[4] 832 F.3d at

---

[4] Critically, the Second Circuit was not persuaded that the mere existence of these Constitutional provisions (the *Ex Post Facto* Clause, the proscription against states retroactively impairing the obligation of contracts, the Bill of Attainder, and the Due Process Clause) was sufficient to establish U.S. public policy. Instead, the Second Circuit reached this conclusion only after explaining these provisions were included in the Constitution because "[r]etroactive legislation that cancels existing contract

108 ("Anti-retroactivity is a principle embedded in several provisions of the Constitution.") (internal quotation marks omitted). Further, there was no dispute that this anti-retroactivity principle was directly implicated in the decision because Pemex specifically asked the Courts to vacate the arbitral award based on the Mexican Congress' retroactive legislation and the Mexican courts' endorsement of that legislation. Here, in contrast, Venezuela has offered no basis for this Court to conclude that confirmation of an arbitral award against Venezuela serves as a recognition of the Maduro Regime.

## B. Venezuela Fails To Identify A Well-Defined Public Policy Sufficient To Invoke The New York Convention's Public Policy Exception To Arbitral Award Confirmation.

Public policy will bar enforcement of an arbitration award only where the purported public policy at issue is "well defined and dominant." *W.R. Grace & Co. v. Loc. Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983); *see also Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*, 844 F.3d

---

rights is repugnant to United States law," and the Constitutional prohibition on such legislations "embodies a legal doctrine centuries older than our Republic." *Pemex,* 832 F.3d at 108.

281, 287 (D.C. Cir. 2016). That public policy "is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *United Paperworkers Int'l,* 484 U.S. at 43 (cleaned up).

Venezuela bears a "heavy burden" to overcome "the countervailing and 'emphatic federal policy in favor of arbitral dispute resolution. . . . [which] applies with special force in the field of international commerce.'" *Enron Nigeria,* 844 F.3d at 289 (quoting *Mitsubishi Motors Corp.,* 473 U.S. at 631). As such, "in addressing whether enforcement of an award should be denied on public policy grounds," this Court gives "at least substantial deference to the arbitrator's interpretation of the agreement, and significant weight to the arbitrator's findings of fact." *Metro. Mun. of Lima v. Rutas De Lima S.A.C.,* 141 F.4th 209, 219 (D.C. Cir. 2025) (cleaned up); *see also United Paperworkers Int'l,* 484 U.S. at 45 (explaining "the fact that [a court] is inquiring into a possible violation of public policy" does not permit the court to "do[] the arbitrator's task.").

Moreover, the "public policy defense . . . is to be construed narrowly." *Enron Nigeria*, 844 F.3d at 289. Indeed, this Court has held that the New York Convention's public policy exception "is available only

where an arbitration award 'tends clearly to undermine the public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property.'" *Id.* (quoting *TermoRio S.A. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007)). This standard is met only "in clear-cut cases" where "enforcement *would violate the forum state's most basic notions of morality and justice.*" *BCB Holdings Ltd. v. Gov't of Belize*, 650 F. App'x 17, 19 (D.C. Cir. 2016) (quoting *TermoRio*, 487 F.3d at 938) (emphasis added).

Conspicuously absent from Venezuela's briefing is *any* caselaw in which a Court has either vacated or refused to confirm an arbitration award on the basis of the President's recognition power. Simply put, Venezuela's argument that the "Executive's exclusive recognition power is precisely the type of public policy that [the public policy] exception was meant to capture" (*Id.* at 21) has never been endorsed by a U.S. court.

This Court should not entertain such a finding. Recognition is not a get-out-of-jail-free card. The recognized government remains responsible for Venezuela's compliance with international law and remains liable for breaches of such law. It matters not that, as here, the

violation of international law occurred before the recognition change. The international legal obligations of a nation state do not change because of a change in government. *The Sapphire*, 78 U.S. 164, 168 (1870). Here, a well-respected international tribunal, applying well-established principles of international law, concluded that Venezuela breached its treaty obligations to VUS and awarded damages. Holding Venezuela responsible for breach of its obligations to VUS does not conflict with the power of the Executive Branch to recognize the legitimate government of Venezuela.

Venezuela repeatedly relies on cases such as *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1 (2015), in which the Supreme Court held that the President possesses exclusive recognition powers. Ven. Br. at 21-22. *Zivotofsky*, according to Venezuela, establishes that the recognition power is both a relevant public policy under the New York Convention and that "the recognition doctrine is of a higher order than the modern policy favoring the enforcement of foreign arbitral awards under the New York Convention." Ven. Br. at 23-24. What Venezuela ignores, however, is that this Court extensively addressed—and rejected—this *Zivotofsky*-based argument in *Valores Mundiales*.

Specifically, this Court explained that "[o]ur enforcement [of the arbitral award] cannot seriously be seen as an attempt by this court to 'aggrandiz[e] its power at the expense of another branch.'" *Valores Mundiales,* 87 F.4th at 522. (quoting *Zivotofsky*, 576 U.S. at 31-32 (alteration in original)). Stated differently, this Court declined to read *Zivotofsky* as creating any additional limits on the judiciary's arbitral confirmation power. *See id.; see also CITGO Petroleum Corp. v. Ascot Underwriting Ltd.*, 158 F.4th 368, 386 n.6 (2d Cir. 2025) (citing the District Court opinion here with approval and explaining that the President's recognition power "did not involve basic notions of morality and justice—as required by the [New York Convention's public policy] exception.") (cleaned up).

Venezuela also seeks to bolster its public policy argument by noting that the President's recognition of the Interim Government gives that regime "standing to appear and speak on behalf of [Venezuela] in U.S. courts." Ven. Br. at 30. True, but irrelevant. As the District Court found, and Venezuela does not address, holding Venezuela responsible for its obligations under the Final Award is not equivalent to allowing the Maduro Regime to appear in this Court to represent Venezuela. 789

F.Supp.3d at 13. As noted, a judgment runs against the foreign state, not the government representing that state at a given time. *See, e.g.*, *The Sapphire*, 78 U.S. at 168 ("The foreign state is the true and real owner . . . . The reigning Emperor, or National Assembly, or other actual person or party in power, is but the agent and representative of the national sovereignty. A change in such representative works no change in the national sovereignty or its rights."); *Guar. Tr. Co. of N. Y. v. United States*, 304 U.S. 126, 137, (1938) ("the rights of a sovereign state are vested in the state rather than in any particular government which may purport to represent it.").

1. *Separation Of Powers Is Not A Relevant Public Policy.*

Having failed to establish that the recognition power is a qualifying public policy, Venezuela pivots to a claim that the actual public policy at issue here is the separation of powers. *See* Ven. Br. at 22. This argument fails as well. Here, too, Venezuela does not cite a single case in which a U.S. court has relied on separation of powers to either refuse confirmation or vacate an arbitral award under the New York convention.

In contrast, this Court has specifically affirmed a district court's confirmation of an arbitral award under the New York Convention over a party's attempts to invoke the public policy exception due to separation of powers concerns. *BCB Holdings*, 650 F. App'x at 19 (holding that the separation of powers "fail[s] to justify the use of the public policy exception."). Indeed, in *BCB Holdings*, this Court explained it would enforce an arbitration award against Belize, despite Belize opposing the award on both separation of powers and international comity grounds under the New York Convention, because "enforcement in this case would not violate any 'basic notion of morality and justice' rooted in either of those two doctrines." *Id.*[5]

---

[5] Likewise, Venezuela claims that "[t]his Court and other circuits have applied an identical public policy exception in deciding whether to enforce awards that were annulled or set aside by foreign courts under Article V(1)(e) of the New York Convention." Ven. Br. at 25. Venezuela ignores, however, that in the three cases it cites to support this position—*TermoRio*, 487 F.3d at 938, *Compañía De Inversiones Mercantiles S.A. v. Grupo Cementos De Chihuahua S.A.B. De C.V.*, 58 F.4th 429, 446-49 (10th Cir. 2023); and *Pemex*, 832 F.3d at 106-07—the Courts confirmed the underlying arbitration award in two of them. Moreover, in the one case Venezuela cites where the Court declined confirmation, it did so on wholly unrelated grounds not at issue here (*see TermoRio*, 487 F.3d at 936 (holding that district court did not err in denying enforcement of arbitration award that had been annulled by "competent authority in the State in which the award was made")), while holding that the respondent failed to sufficiently allege,

Accordingly, Venezuela has failed to meet its burden of establishing that this confirmation proceeding implicates any U.S. public policy sufficient to invoke the New York Convention's public policy exception to enforcement.

2. *The Fact That Recognition Of The Final Award May Lead To Judgment Enforcement In The U.S. Does Not Support Venezuela's Public Policy Argument.*

The misappropriation of dividends that gave rise to the claims in this case occurred while a Venezuelan government recognized by the United States was in power. That same government, represented by Curtis, defended Venezuela against the claims made by VUS at both the jurisdictional and merits phases of the underlying arbitration.[6] Curtis continued to serve as counsel for the Maduro Regime after it had been de-recognized by the Executive Branch for an additional 13 months. The Interim Government does not dispute the arbitral tribunal's findings as to liability or damages here. It is not "fundamentally unjust" (Ven Br. at 39) for VUS to recover from the State of Venezuela for the damages

_____

much less establish, how confirmation would be "repugnant to the public policy of the United States." *Id.* at 941.

[6] The third phase, concerning damages, awarded VUS the relief it sought from the commencement of the arbitration—its actual damages plus interest and costs. Venezuela was on notice of this demand from the outset.

caused by the acts of the recognized government of Venezuela in misappropriating the dividend payments owed to VUS, nor does the prospect of judgment enforcement weigh against confirmation of the Final Award—a proposition for which Venezuela offers no authority. Indeed, during the pendency of Valores Mundiales' appeal before this Court, Valores Mundiales filed an action for registration of its judgment in the District of Delaware as part of its judgment enforcement efforts. *See Valores Mundiales S.L. et al. v. Bolivarian Republic of Venezuela*, No. 1:23-mc-298 (D. Del. June 7, 2023).

Venezuela's effort to characterize the Final Award as an award against the Maduro Regime, and not against the state of Venezuela, relying on *In re Terrorist Attacks on Sept. 11, 2001*, 657 F. Supp. 3d 311, 332 (S.D.N.Y. 2023), in which the Southern District of New York refused to enforce a default judgment due, in part, to the President's recognition power, is not tenable. The plaintiffs in *In re Terrorist Attacks* sought to force Afghanistan to pay a default judgment entered against the Taliban, because the Taliban had retaken control of Afghanistan's government. *Id.* at 321. The court rejected this argument, noting that because the President had not recognized the Taliban as Afghanistan's government,

the judiciary was powerless to hold Afghanistan responsible for the Taliban's debts. *Id.* at 334-35.

Here, in contrast, the Final Award was issued in VUS's favor against Venezuela—not against the Maduro Regime. Stated differently, VUS asks Venezuela to answer for an arbitration award entered *against Venezuela*, whereas *In re Terrorist Attacks* precluded plaintiffs from forcing Afghanistan to answer for a default judgment entered against a party who became the unrecognized, *de facto* government of Afghanistan. As such, *In re Terrorist Attacks* does not support Venezuela's position. Likewise, none of the other cases cited by Venezuela in support of this argument compel a different outcome. *See, e.g.*, *Jiménez v. Palacios*, 250 A.3d 814, 842 (Del. Ch. 2019) (Delaware Court of Chancery action addressing the Interim Government's authority to appoint directors of Petróleos de Venezuela, S.A.), and *Republic of Panama v. Republic Nat. Bank of N. Y.*, 681 F. Supp. 1066, 1071 (S.D.N.Y. 1988) (holding that when "a foreign state's property located in the United States is demanded by two claimants, official recognition of one is conclusive."). This case is not, however, a dispute about which government or regime can currently

exercise rights of ownership over Venezuela's property in the United States.

Accordingly, Venezuela has not carried its burden of establishing that the Final Award would violate the President's recognition power.

## II. THE FEDERAL ARBITRATION ACT PROVIDES NO OTHER GROUNDS TO REFUSE CONFIRMATION OF THE AWARD

As discussed above, the FAA mandates that courts "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York Convention]." 9 U.S.C. § 207. Because Venezuela's public policy based arguments fail and it raises no other challenges to the Final Award, the Court should affirm the District Court's order confirming, recognizing, and enforcing the Final Award.

## CONCLUSION

The Court should affirm the District Court's judgment.

Dated: December 24, 2025        Respectfully submitted,

                                      /s/ *John M. Conlon*
                                      John M. Conlon
                                      Kevin B. Weehunt, Jr.
                                      MAYER BROWN LLP
                                      1221 Avenue of the Americas
                                      New York, NY 10020
                                      (212) 506-2500
                                      jconlon@mayerbrown.com
                                      kweehunt@mayerbrown.com

                                      Michael P. Lennon, Jr.
                                      MAYER BROWN LLP
                                      700 Louisiana Street, Suite 3400
                                      Houston, TX 77002
                                      (713) 238-3000
                                      mlennon@mayerbrown.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i)    complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(a)(7) because it contains 6,683 words, including footnotes and excluding the parts of the petition exempted by Rule 32(f); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word 365 and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated: December 24, 2025       */s/ John M. Conlon*
                                    John M. Conlon

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on December 24, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *John M. Conlon*
John M. Conlon

# ADDENDUM OF AUTHORITIES

## ADDENDUM

**§ 207. Award of arbitrators; confirmation; jurisdiction; proceeding**...................................................................2(A)

**New York Convention Article V(2)(b)**..........................................3(A)

## § 207. Award of arbitrators; confirmation; jurisdiction; proceeding

Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

**New York Convention Article V(2)(b)**

Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.